JASON KULLER
Nevada Bar No. 12244
KULLER LAW PC
10775 Double R Blvd.
Reno, Nevada  89521
T: (855) 223-2677
F: (855) 810-8103

P. KYLE SMITH
Nevada Bar No. 9692
LYNCH, HOPPER, SALZANO & SMITH
1640 Alta Drive, Ste. 11
Las Vegas NV 89106
T: (702) 868-1115
F: (702) 868-1114

MARK THIERMAN
Nevada Bar No. 8285
THIERMAN LAW FIRM
7287 Lakeside Drive
Reno, Nevada 89511
T: (775) 284-1500
F: (775) 703-5027

*Attorneys on behalf of Plaintiffs*

# UNITED STATES DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| ROBERT GREENE, on behalf of himself and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ALAN WAXLER GROUP CHARTER SERVICES, LLC dba AWG CHARTER SERVICES, a Nevada Limited Liability Company, Does 1-50, inclusive,<br><br>　　　　Defendants<br><br>SAM BAUM, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ALAN WAXLER, et al.,<br><br>　　　　Defendants. | Greene v. Alan Waxler Charter Services<br>Case No.:  2:09-CV-00748-JCM-RJJ<br><br>Consolidated with:<br>Baum, et. al. v. Alan Waxler, et. al.<br>Case No.:  2:09-CV-0914-LDG-PAL<br><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DECERTIFY AS A REPRESENTATIVE CLASS AND COLLECTIVE ACTION (ECF 174)** |

# I.

## DEFENDANTS' MOTION MUST BE DENIED
## ON GROUNDS OF JUDICIAL ESTOPPEL.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir 2001). Courts invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts." *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990).

Here, on May 22, 2009, Defendants filed an "Emergency" motion to consolidate the *Greene* and *Baum* actions "on the grounds that common issues of fact and law ***predominate***." (ECF 7 at 1:23-24 (emphasis added).) In order to gain consolidation, Defendants represented to the Court that the "*Greene* and *Baum* Actions raise the __**identical**__ issues of law and fact." (*Id.* at 5:24 (***emphasis in original***).) In the words of Defendants: "It is an ***understatement*** that these actions raise common questions of law and fact. The cases were filed within days of one another and assert the ***same*** claims for violations of Nevada and federal wage and hour statutes on behalf of a ***similar*** class of employees, and demand the ***same*** relief." (*Id.* at 3:11-14 (emphasis added).) "The witnesses in each case will be the ***same***. The legal analysis, including whether any exemptions from the payment of the minimum wage or overtime to the drivers applies, and if not, what minimum wages and overtime amounts are owed, will be the ***same*** . . . [T]he relevant time period for each case is also the ***same***." (*See id.* at 5:28 – 6:4.) In order "to avoid the unnecessary cost of duplicative proceedings . . . as well as the risk of inconsistent judgments" (*id.* at 3:16-17). Defendants successfully obtained consolidation. (See ECF 9.)

Now facing a class and collective action trial against the same Plaintiffs and groups of employees they represent, Defendants argue the exact opposite: Defendants contend "**There Is**

**Complete Disparity in the Factual and Employment Settings of the Plaintiffs**." (*See* Defendants' Motion to Decertify as a Representative Class and Collective Action ("Motion") at 16:16-17 (emphasis in original).) Defendants contend common issues of law and fact do not even exist, much less predominate. (*See id.* at sections I, III.A, III.D.) That there are "**No Common Answers to Plaintiffs' Claims**." (*Id.* at 24:29 (emphasis in original.) That defenses and damages will be different. (*See id.* at section IV.C.) And that Plaintiffs and opt-in plaintiffs are not "**Similarly Situated**." (*See id.* at sections III.B, IV.A.)

Because Defendants were earlier successful in gaining consolidation, and the Court accepted and relied on Defendants' representations, this is a textbook case of judicial estoppel. *See Hamilton*, 270 F.3d at 783. The Court may stop reading now if it wishes and deny Defendants' Motion. In all other ways Defendants' motion is meritless.

## II.

## COUNTER-STATEMENT OF LEGAL STANDARD
## AND PROCEDURAL POSTURE.

Defendants misstate the applicable "legal standard" for reconsidering this Court's prior certification order.[1] (Mot. at 6 (section III).) Citing *General Tel. Co of Southwest v. Falcon*, 457 U.S. 147, 160 (1982), Defendants assert "[a]n order certifying a class action is conditional, and my be modified at any time." (Mot. at 6:16-17.) That's not what *Falcon* says. What the Supreme Court actually said is "Even after a certification order is entered, the judge remains free to modify it ***in the light of subsequent developments in the litigation***." *Id.* at 160 (emphasis added). This flexibility adheres "***particularly during the period before any notice is sent to members of the class***." *Id.* (emphasis added).

Here, Defendants' Motion is not based on any "subsequent developments in the litigation." Defendants' Motion accords no deference whatsoever to the Court's previous certification order. "Applying a 'law of the case' rationale, a class once certified . . . should be

---

[1] Defendants also recently misrepresented the applicable standard of review in asking this Court to reverse the Magistrate Judge's sanction order. (*See* ECF 186 at 3-6 (section II).)

decertified **only where it is clear there exist changed circumstances** making continued class action treatment improper." *Sley v. Jamaica Water & Util., Inc.*, 77 F.R.D. 391, 394 (E.D. Pa. 1977) (emphasis added).

Absent this deferential standard, defendants – like AWG here – would have strong incentives to move for decertification repeatedly, even based on the same argument and evidence previously rejected. That is exactly what's happening here. Defendants may have new **counsel**, but they have no new evidence, no changed circumstances, and no new arguments warranting decertification.

Contrary to Defendants' misleading paraphrase of *Falcon*, Defendants are not free to challenge certification "at any time." Under Rule 23, certification order may occur, at the very latest, "before final judgment." Rule 23(c)(1)(C), Fed. R. Civ. P. And under the *Falcon* standard, modification should occur – if at all – "**during the period before any notice is sent to members of the class**." 457 U.S. at 160 (emphasis added). That is because the parties will make important strategic decision and expend substantial resources litigating the case in reliance on the class certification decision. *See Doe v. Karadzic*, 192 F.R. D 133, 136-37 (S.D.N.Y. 2000) (recognizing that motions for decertification at the "early stages" of litigation may fare better than those brought at a "late juncture"). As a small example, Plaintiffs' counsel expended $9,386.73 to administer notice through a third-party claims administrator (Simpluris) and to publish the notice in the Las Vegas Review Journal per the Court's Order. (*See* ECF 112 at ¶¶ 2, 6).

Far from the "early stages," Defendants did not move for decertification until almost **two years after** this Court ordered notice to be sent. While the Court granted certification in April of **2012** (ECF 103), Defendants waited until April of **2014** (ECF 174) to move for decertification, which was only 75 days before trial.[2] The Court "must take into consideration that an eve-of-trial decertification could adversely and unfairly prejudices class members, who

---

[2] Trial has since been reset to July 28, 2014, based on a family death and increased medical care responsibilities affecting Plaintiffs' counsel. (*See* ECF 184:13-20.)

3

may be unable to protect their own interests." *Langley v. Coughlin*, 715 F Sup. 522, 552 (S.D. N.Y. 1989).

Defendants also cite *Falcon* for the proposition that certification is "conditional." (Mot. at 6:16.)  Again that's not what *Falcon* says, and Defendants conflate the standards for collective actions under the Fair Labor Standards Act ("FLSA") with the standards for class actions under Rule 23.  *Falcon* involves Rule 23 and does not even use the word "conditional," which is a term reserved for the first stage of FLSA collective actions.  *Falcon* says Rule 23 certification orders are "inherently tentative" "***during the period before any notice is sent to members of the class.***"  457 U.S. at 160 (emphasis added).    Courts are thus particularly disinclined  to reverse their original certification decision after class notice has been issued. *See Karadzic*, 192 F.R.D. at 136; *Hickey v. Great W. Mortgage Corp.*, No. 94 C 3638, 1995 WL 121534, at *10 n.6 (N.D. Ill. Mar. 17, 1995).

Accordingly, since notice was sent ***back in 2012***, Defendants bear a much heavier burden to undo this Court's certification order, especially on the eve of trial and after the Court and the parties have expended considerable resources during the past two years.  *See Manual for Complex Litigation (Third)* § 30.18, at 223 (1995) (recognizing that a district court may alter a class certification order "for good cause," such as where "the discovery of new facts" necessitates reconsideration, but the court should also consider "whether the parties or the class would be unfairly prejudice by a change in the proceedings at that point").  This Court has already found class certification appropriate, which was the right decision (see ECF 95, 97, 103) and one that the parties acted on. "Absent some ***significant intervening event***, those findings may be deemed to be the law of the case, and they reflect that plaintiffs have satisfied the requirements of Rule 23 . . . ."  *Langley*, 715 F. Supp. at 553.

"It follows, therefore, that a party seeking *decertification* of a class should bear the burden of demonstrating that the elements of Rule 23 have *not* been established."  *See Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651 (C.D. Cal. 2000) (italics in original).  Here, no new facts have been developed, discovered, or disclosed by Defendants since the Court's certification order.  *See* 6A Fed. Proc., L. Ed. § 12:296 (updated Sept. 2008) ("An action once certified as a

4

class action may be decertified where new facts have been developed to justify such a redetermination.")  On the contrary, Defendants have refused to disclose class data probative of class claims and damages.  (*See* Plaintiffs' Motion for Sanctions (ECF 185) at 8-13 & Ex.'s 1-13.)  So apart from failing to meet their heavy burden, Defendants laches and unclean hands cannot justify the "drastic step" of decertification.  *Gordon v. Hunt*, 117 FR.D. 58, 61 (S.D.N.Y. 1987).

Significantly, Defendants opposed Plaintiffs' renewed motion for certification by disputing the numerosity of the class.  (*See* ECF 96 at 3-4 (section II.A).)  Defendants accused Plaintiffs of "relying, inappropriately, on [General Manager] Daniela Chan's statement" depicting approximately 150 drivers during a three-year period.  (*See* ECF 96 at 3:25-27.) Concealing the actual class numbers in its possession, and disavowing the sworn statement of its General Manager, Defendants called Plaintiffs' numerosity analysis "estimates and speculation."  (*Id.* at 4:19-20.)

Yet as Plaintiffs told the Court at the time:

> "[W]hile Plaintiffs are not required at this stage to specify the exact number of persons in the class, this information is controlled by Defendants, which have thus far refused to provide it . . . Defendants have thus placed Plaintiffs in a Catch-22 whereby Plaintiffs cannot obtain class-wide numerosity data unless they are first certified and Plaintiffs cannot get certified unless they first establish numerosity."

(ECF 95 at 5:1-7 (footnotes and authorities omitted).)

Defendants' dispute of numerosity, on top of withholding class data, was not in good faith.  After the Court ordered certification and the distribution of notice, Defendants provided Plaintiffs with a *partial* list of class members totaling ***over 300***.  (*See* letter dated June 11, 2012, attached hereto as **Exhibit 1** (personal information redacted).)  Notice was ultimately mailed to ***657*** drivers.  (*See* final weekly report from claims administrator dated January 11, 2013, attached hereto as **Exhibit 2**.)  On January 23, 2013, Plaintiffs submitted a list of 118 valid opt-ins to the Court.[3]  (*See* ECF 116.)  This list represents the members of Plaintiffs' *opt-*

---

[3] Of the original 657, over 40% came back returned, 25% were re-mailed, and 115 were ultimately deemed undeliverable.  (*See* **Exhibit 2**.)  The final tally will depend on whether late or pending consents to join are accepted by the Court.  Since the class notice period has ended,

in collective action under the FLSA.  There are 654 members of Plaintiffs' *opt-out* class action under Rule 23 and Nevada state law.[4]

As presently demonstrated, certification is still appropriate – if not necessary – for Plaintiffs' FLSA collective action and Plaintiffs' Rule 23 state law class.

### III.

### DEFENDANTS FAIL TO DEMONSTRATE ANY BASIS TO DECERTIFY PLAINTIFFS' AND CLASS MEMBERS' STATE LAW CLAIMS UNDER RULE 23.

Again, "[d]ecertification should only occur where it is clear that changed circumstances make continuation of the class action improper." *Robin v. Doctors Officenters Corp.*, 686 F. Supp. 199, 203 (N.D. Ill. 1988) (citing *Sley*, 77 F.R.D. at 394); *accord McLendon v. M. David Lowe Pers. Servs.*, Inc., 83 F.R.D. 204, 206 (S.D. Tex 1979); *In re Nat'l Student Mktg. Litig.*, MDL Docket No. 105, 1981 WL 1617, at *8 (D.D.C. 1981); *In re Asbestos Sch. Litig.*, No. 83-0286, 1990 WL 2194, at *1 (E.D. Pa. Jan. 11, 1990).  Here Defendants pretend that certification has not already been fully briefed by the parties (three times), and already decided by the Court (three times).  (*See* ECF 27, 32, 34, 36, 50, 73, 78-79, 94-97, 103.)   There is no new evidence and no new case law.  Defendant's Motion is nothing but a renewed opposition to certification.  Far from "changed circumstances," Defendants' Motion is based on hindsight wisdom, playing Monday Morning Quarterback in place of Defendants' original counsel.  And on this ***fourth*** bite at the apple, Defendants still come up empty.

**A.     *Dukes* Is Not An Intervening Event, and Defendants' Reliance Is Misplaced.**

Defendants' white horse case for decertification is *Wal-Mart Stores, Inc. v. Dukes*, ___U.S. ___, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011).  *Dukes* was decided by the Supreme Court on June 20, 2011, and was available to Defendants in opposing Plaintiffs' certification motion on September 6, 2011 (ECF 78) and Plaintiffs' original motion on February 6, 2012 (ECF 96).  Then again, Defendants did not move for decertification until almost three years

---

Plaintiffs' counsel has learned of class members who were never provided with notice because Defendants failed to disclose them on the class list.

[4] Of the 657 class members identified by Defendants, there were just three valid opt outs.  (*See* **Exhibit 2**.)

6

after *Dukes* was decided.  Thus, Defendants cannot contend *Dukes* is intervening new authority warranting decertification.  And in fact *Dukes* does not require decertification of this wage-hour class action.

*Dukes* is a Title VII disparate impact case and is inapposite.  In *Dukes*, 1.5 million nationwide claimants were required to prove that thousands of store managers had the same discriminatory intent in preferring men over women for promotions and pay raises.  In *Dukes*, the second stage trial plan did not allow the defendant its statutory right to prove a lawful reason for its employment decisions, either individually or class-wide.  131 S. Ct. at 2561.  This problem presented a statutory obstacle unique to Title VII cases.

No such problem exists in this case, and Defendants have no comparable statutory right.  Unlike the 1.5 million individuals in *Duke*s, spread across numerous various locations across the country, the Rule 23 class here is approximately 650 drivers who worked at the same small location subject to the same pay policies.  (Plaintiffs' FLSA class of 120 drivers is smaller and arguably more homogeneous.)  Unlike in *Dukes*, none of Plaintiffs' wage claims in this case require "an examination of the subjective intent behind millions of individual employment decisions." *See Youngblood v. Family Dollar Stores, Inc.,* No. 09 Civ. 3176(RMB), 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011) (involving New York's version of the FLSA).

Whereas *Dukes* involved an "aggregate proof "class action (depending on the existence of market-wide or protected-class impact), this case would be a "replicated proof" class action involving the same documentary,[5] testimonial,[6] or other business record evidence.  *See* Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L. Rev. 97, 115-124 (2009) (differentiating between the two different types of class actions).  Unlike an aggregate proof class action like *Dukes*, there are no individual defenses in a replicated proof class action.  Here, proof that Defendants maintain an unlawful pay policy – like failing to pay drivers for

---

[5] *See attached* **Exhibit 5** (showing Defendants changed their pay policy to hourly after learning of similar lawsuit against Bell Limousine).

[6] *E.g.*, the testimony of Judith Samuels, former AWG finance manager.

pre-shift work – would prove AWG's liability even if each class member proceeded individually.

Unlike in *Dukes*, Defendants' uniform pay policies and practices are the common answer that potentially drives the resolution of this litigation. In this case, the "glue" holding all of Plaintiffs' class claims together is Defendants' company-wide policy failing to pay drivers for each hour and overtime hour of work. *See Wal-Mart*, 131 S. Ct. at 2552. Plaintiffs' class claims thus depend on one common contention: The lawfulness (or unlawfulness) of Defendants' pay policies. Either way, Plaintiffs' class claims are capable of class-wide resolution "in one stroke." *See Dukes*, 131 S. Ct. at 2551.

**B.     Defendants' Damages Argument Has Been Rejected by the Ninth Circuit.**

Defendants' analysis also confuses liability with damages. Throughout their Motion, Defendants argue for class decertification based on the varying amounts of individualized damages that would be owed each class member. Yet as the Ninth Circuit recently held, "damage calculations alone cannot defeat certification." *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (reversing district court's denial of certification predicated on individualized damage calculations for state-law pay violations) (distinguishing *Comcast Corp. v. Behrend*, ___U.S. ___, 133 S.Ct. 1426, 185 L.Ed. 2d 515 (2013)[7]). In the words of the Ninth Circuit: "[D]amages determinations are individual in ***nearly all wage-and-hour class actions***," but that does not prevent damages from being "feasibly and efficiently . . . calculated once the common liability questions are adjudicated." *Leyva*, 716 F.3d at 513-14; *see also Gripenstraw v Blazin' Wings, Inc.*, 2013 U.S. Dist. LEXIS 179214, at *21-23 (E.D. Cal. Dec. 19, 2013) (finding even "wide divergence on the question of damage calculations for proposed class members" did not defeat a finding of predominance under Rule 23(b)(3)).

Furthermore, although Defendants complain about the lack of a class-wide damages calculation and a potential "Trial by Formula," there is no common methodology or damage model requirement for certification of wage-hour claims under federal law. *See Harris v.*

_____

[7] Defendants curiously failed to cite *Comcast* – arguably as important as *Dukes* to its argument – perhaps knowing it had been marginalized by the Ninth Circuit.

8

*comScore, Inc.*, 2013 U.S. Dist. LEXIS 47399, at *11 n. 9 (N.D. Ill. Apr.2, 2013).  More importantly, Defendants cannot complain about the lack of a class damage calculation when they have failed and refused to turn over class data.  (*See* Plaintiffs' Motion for Sanctions (ECF 185) at 8-13 & Ex.'s 1-13.)  To the extent unresolved damages issues remain at the time of trial, the Court should appoint a Special Master pursuant to Rule 53(a)(1), Fed. R. Civ. P., "to perform an accounting[8] or resolve a difficult computation of damages."  *See Glass v. UBS Financial Services, Inc.*, 331 Fed. Appx. 452, 455 (9th Cir. 2009) (affirming appointment of special master to address the parties' damages analysis in action asserting unpaid overtime wages).

## IV.

### DEFENDANTS FAIL TO DEMONSTRATE ANY BASIS TO DECERTIFY PLAINTIFFS AND OPT-INS' COLLECTIVE ACTION UNDER THE FLSA.

Again, with no new evidence and without conducting any discovery on the issue, Defendants argue that Plaintiffs' FLSA class is not "similarly situated."  Aside from being judicially estopped (*see* section I, *supra*), this argument is also meritless.  All 116 opt-in plaintiffs are similarly situated in one important respect:  By virtue of responding to the notice, identifying themselves as victims of Defendants' pay practices, and consenting to join the lawsuit.  (*See* consents to join attached hereto as **Exhibit 4**.)  Each consent to join is an acknowledgement "that AWG violated the Fair Labor Standards Act" and "seeks unpaid minimum wages, overtime, and related damages."  (*See id.*)

**A.     Plaintiffs' FLSA Claims May Be Proven by Representative Testimony.**

Defendants are flat wrong that Plaintiffs' FLSA claims cannot be proven by representative testimony.  *See Anderson v. Mt. Clemens Potter Co.*, 328 U.S. 680 (1946).  It is almost universally recognized across every circuit that plaintiff-employees can establish a *prima facie* right to recover on behalf of non-testifying individuals who were subject to the same illegal pattern or practice.  *See, e.g., Secretary of Labor v. De Sisto*, 929 F.2d 789, 791

---

[8] As Defendants' Motion recognizes, Plaintiffs' complaint affirmatively seeks an accounting as relief.  (*See* Mot. at 5:5.)

(1st Cir. 1991); *Harold Levinson Assocs., Inc. v. Shao*, 27 Fed. Appx. 19, 21 (2d Cir. 2002); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701-02 (3d Cir. 1994); *Reich v. Southern Md. Hosp., Inc.*, 43 F.3d 949, 951-52, (4th Cir. 1995); *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1330-31 (5th Cir. 1985); *U.S. Dept. of Labor v. Cole Enters., Inc.* 62 F.3d 775, 780-81 (6th Cir. 1995); *Brock v. Tony and Susan Alamo Found.*, 842 F.2d 1018, 1019-20 (8th Cir. 1988); *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988); *Donovan v. Simmons Petroleum Corp.*, 725F.2d 83, 85-86 (10th Cir. 1983); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1278-80 (11th Cir. 2008).

Conflating class and collective actions again, Defendants attempt to apply *Dukes* to Plaintiffs' collective action.  (*See* Mot. at 24:20-24.)  As Defendants well know, "Rule 23 certification requirements do not apply to FLSA collective actions."  *Lay v. Gold's Gym Intern. Inc.*, 2013 WL 5595956 (W.D. Tex. Oct. 4, 2013).  Besides, *Dukes* did not even sound the death knell of Title VII disparate impact discrimination (*see McReynolds v. Merrill Lynch*, 672 F.3d 482 (7th Cir.), *cert denied*, 133 S.Ct. 338 (2012)), much less wage-hour class actions or FLSA collective actions.

Defendants' "representative" examples are also wrong.  For example, Robert Greene worked approximately 11.5 hours on October 4, 2008 (see attached **Exhibit 6**), instead of the 5 hours shown by Defendants' "records."  Defendants' "records" only show driving hours – not all the other off-the-clock hours.  Even after Defendants switched to hourly pay, Mr. Greene was still not paid for at least 25 hours of overtime.  (*See* attached Exhibit 7.)

**B.     Defendants' "Available" Defenses Are Also Susceptible to Common Proof.**

Just because Defendants are moving for decertification does not entitle them to revisit the Court's summary judgment rulings on their defenses.  Just as with decertification, however, Defendants re-argue the law and evidence previously submitted by the parties and decided by the Court.  Plaintiffs have already refuted Defendants' Motor Carrier Act ("MCA") and limitations defense based on the declarations and other common evidence submitted by Defendants.  (*See* ECF 80 attached hereto as **Exhibit 3**.)  Those determinations are not still up for grabs, and it is still Defendants' burden at trial to prove they come within the MCA

exemption.  *See, e.g., Swan v. Nick Group, Inc.*, 2013 WL 5200508, at *3 (N.D. Ga. Sept. 13, 2013) ("The employer has the burden to show that the MCA Exemption's requirements are satisfied, and the Court construes the MCA Exemption narrowly against the employer.").  As always, it is hypocritical for Defendants to now argue their MCA defense is "individualized" when they previously sought summary judgment in blanket fashion based on their own common evidence.

Defendants also raise their newly asserted "Taxicab Exemption" for the first time.  Yet there's a reason this defense was never previously raised:  It too is a loser.  Defendants' only argument for applying this exemption is the sheer *ipse dixit* that AWG is suddenly in the "business of operating taxicabs."  (Mot. at 20:25.)  Yet there's no actual evidence that Defendants' chauffeured vehicles "operate without fixed routes or contracts for recurrent transportation" or otherwise fall within the definition of "taxicab."  *See Powell v. Carey International, Inc.*, 483 F.Supp.2d 1168, 1177-78 (S.D. Fla. 2007) (granting summary judgment to the plaintiffs on this issue).

Besides, even if Defendants were in the "business of operating taxicabs," this is not an individualized issue and has no bearing on decertification.  It is inappropriate for Defendants to keep badgering Plaintiffs and the Court with irrelevant and overreaching arguments. This is not a motion for summary judgment and Defendants cannot win this case on paper.  Defendants were more persuasive when they told the Court: "The legal analysis, including whether any exemptions from the payment of the minimum wage or overtime to the drivers applies, and if not, what minimum wages and overtime amounts are owed, will be the ***same***." (*See* ECF 7 at 5:28 – 6:3.)

## V.

## CONCLUSION

"In the absence of materially changed or clarified circumstances, or the occurrence of a condition of which the initial class ruling was expressly contingent, courts should not condone a series of rearguments on the class issues by either the proponent or the opponent of a class, in the guise of motions to reconsider the class ruling."  Herbert B. Newberg & Alba Conte,

*Newberg On Class Actions: A Manual for Group Litigation at Federal and State Levels* § 7:47 (update 2008).  Such is the case here.  The Court should not condone Defendants' rearguments of certification and equitable tolling, and disguised reconsideration of its summary judgment arguments, which were already reconsidered and rejected.  (*See* ECF 94, 132, 166.)

As noted, certification has already been fully briefed and decided ***three times before***.  (*See* ECF 27, 32, 34, 36, 50, 73, 78-79, 94-97, 103.)  Defendants now desperately want another do-over, but there has been no intervening event or changed circumstances justifying the drastic step of decertification at this late stage.  For all these reasons, the Court should deny Defendants' Motion in its entirety.

A bench trial is two months away.  Plaintiffs are actively preparing.  Plaintiffs' class and collective claims can be and will be effectively tried before the Court by common and representative evidence.  If not, the Court may alter or amend its certification order ***at that time*** "before final judgment." Rule 23(c)(1)(C), Fed. R. Civ. P.  But there is simply no reason to decertify the Plaintiff classes now based on Defendants' Chicken Little-like claims that the sky will fall and the action will "devolve into nothing more than individual mini-trials."  (Mot. at 3:25-26.)  Nothing in the Federal Rules of Civil Procedure require Plaintiffs to submit a trial plan in order to maintain certification.  *See Chamerlan v. Ford Motor Co.*, 402 F.3d 952, 961 n.4 (9th Cir. 2005).

Ironically, Defendants' parade of horribles is much more likely to occur – and almost certainly will occur – ***if Defendants' Motion were granted***.  That is because, if decertification is granted, there will be at least 116 new individual plaintiffs joining the 18 named plaintiffs in this lawsuit, or otherwise clogging the courts by filing their own individual lawsuits.  *See, e.g., Lusardi v. Xerox Corp.*, 747 F.2d 174, 178 (3d Cir. 1984) (noting that likely effect of decertification "would be a revocation of the consents, a tolling of the statute of limitations, and a notice to the parties that they may proceed individually").

Defendants once argued "[i]t would be a substantial waste of judicial and party resources to duplicate efforts in two cases, before different judges, in the same court, to resolve identical issues of law and fact."  (ECF 7 at 6:7-9.)  That same reasoning applies *a fortiori*

now.   Considering the fairness and potential prejudices to the parties and opt-ins, the Court's fiduciary duty to absentee class members, and the savings in judicial economy, Defendants' Motion must be denied.

Dated:  May 23, 2014                    KULLER LAW PC
                                        LYNCH HOPPER SALZANO & SMITH
                                        THIERMAN LAW FIRM


                                        By:   ___/s/ Jason Kuller_____
                                              Jason Kuller

                                        Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that, on the date shown file stamped on this document, I served a copy of the foregoing document via electronic service in accordance with the Local Rules and that it was served on all parties registered with the Court's CM/ECF system of electronic service.

_/s/ Jason Kuller_
Jason Kuller